UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

RICHARD GILES TORO, et al.,

Plaintiffs,

vs.                                CIVIL NO. 97-2934 (DRD)

THE UNIVERSITY OF PUERTO RICO,
et al.,

Defendants.

## OPINION AND ORDER

### I. DR. ANGEL RODRIGUEZ TRINIDAD

On June 23, 1998, Defendant, Dr. Angel Rodriguez Trinidad ("Rodriguez"), filed a Motion To Dismiss (Docket No. 24) asserting three grounds in his motion: (1) plaintiffs Mayra Nuñez de Giles and the conjugal partnership constituted among her and her husband are not entitled to any relief under 42 U.S.C. § 1983; (2) failure to state a claim under 42 U.S.C. § 1985 and § 1986; and (3) plaintiff's supplemental claims under state law should be dismissed as well for lack of a foundational federal claim. (Docket No. 24). Plaintiffs, on October 19, 1999, asked for an extension to oppose, which was granted until November 30, 1998. (Docket No. 45). Thereafter, on December 2, 1998, Rodriguez filed a Motion To Adjudicate Unopposed Motion To Dismiss (Docket No. 48), requesting the Court deem the motion unopposed. To date Plaintiffs have not opposed.

On March 19, 1999, Rodriguez filed a Motion For Judgment On The Pleadings (Docket



AO 72A
(Rev.8/82)

No. 65), adding additional grounds for dismissal: (4) failure to state a claim under the Equal Protection Clause of the Fourteenth Amendment of the Constitution; and (5) claims for breach of contract, fraud, fraudulent concealment, and breach of Covenant of Good Faith and Fair Dealing should be dismissed for lack of jurisdiction. Plaintiffs filed an Opposition To "Motion For Judgment On The Pleadings" (Docket No. 66).

First, the Court agrees that Plaintiffs, Mayra Nuñez de Giles and the conjugal partnership constituted among her and her husband, are not entitled to any relief under 42 U.S.C. § 1983. See Valdivieso Ortiz v. Burgos, 807 F.2d 6, 8 (1st Cir. 1986); see also Pittskey v. Warish, 927 F.2d 3, 8 (1st Cir. 1991). Therefore the 42 U.S.C. § 1983 claim by plaintiffs Mayra Nuñez de Giles and the conjugal partnership constituted among her and her husband is hereby **DISMISSED**.

Second, § 1985 creates a cause of action, under subsection (3) and the third clause of subsection (2), against parties who conspire to obstruct "the due course of justice." Clearly, § 1985(3) requires a class-based animus. See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); Aulson v. Blanchard, 83 F.3d 1 (1st Cir. 1996); Davila Aleman v. Feliciano Melecio, 992 F.Supp. 91, 102 n.14 (D. P.R. 1998). Similarly, the same class-based animus is mandatory for a claim under the third clause of § 1985(2). See Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). Close scrutiny of the Complaint reveals no such allegations. Therefore, Plaintiffs' § 1985 claim, and consequently their § 1986 cause of action are **DISMISSED**. See id.

Third, and Fifth, because a federal cause of action is still pending at this time the Court exercises its discretion and retains supplemental jurisdiction over the alleged Commonwealth of

AO 72A
(Rev.8/82)

Puerto Rico claims. Thus, the third and fifth grounds to dismiss are **DENIED WITHOUT PREJUDICE** at this time.

<u>Fourth,</u> Plaintiffs have failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment of the Constitution because neither classification nor discriminatory intent are alleged. <u>See e.g.</u> <u>Hayden v. Grayson</u>, 134 F.3d 449 (1st Cir. 1998). Hence, any Equal Protection claim via § 1983 is hereby **DISMISSED**. However, because the Complaint, under the § 1983 cause of action, alleges actions which "deprived the plaintiff of the full and equal protection of his Constitutional Rights, specifically the 14th Amendment of said constitution" the Court believes that the Plaintiffs may have a Due Process violation claim under the 14th Amendment. Correspondingly, the Court holds that the Plaintiff's, Richard Giles Toro, § 1983 claim for violation of his Due Process rights remains.

Wherefore, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's, Dr. Angel Rodriguez Trinidad Motion To Dismiss (Docket No. 24) and Motion For Judgment On The Pleadings (Docket No. 65) as follows: the 42 U.S.C. § 1983 claim by plaintiffs, Mayra Nuñez de Giles and the conjugal partnership constituted among her and her husband is **DISMISSED**; Plaintiffs' § 1985 and § 1986 claims are **DISMISSED**; and any Equal Protection claim via Plaintiff's, Richard Giles Toro, § 1983 claim is **DISMISSED**.

## II. ANALYTICAL

Defendant, Analytical Genetic Testing Center, Inc. ("Analytical"), filed a Motion To Dismiss Or For Venue Transfer And Under L.R. 311.6. (Docket No. 60). Therein, Analytical asserts similar grounds for dismissal as to the Plaintiffs' §§ 1985 and 1986 claims and the Equal

-3-

AO 72A
(Rev.8/82)

Protection claim under § 1983. Finding that the analyses and holdings above apply here with equal force, Plaintiffs' § 1985 and § 1986 claims are hereby **DISMISSED**; and any Equal Protection claim via Plaintiff's, Richard Giles Toro, § 1983 claim is also **DISMISSED**. Likewise, because a federal cause of action is pending at this time the Court exercises its discretion and retains supplemental jurisdiction over the alleged Commonwealth of Puerto Rico claims. Thus, the request to dismiss Puerto Rico law claims is **DENIED WITHOUT PREJUDICE** at this time.

In addition, Analytical argues that Plaintiffs have not demonstrated the requisite state action for a § 1983 claim. Analytical avers that Plaintiffs have failed to describe a single concrete incident whereby Analytical, jointly with the University of Puerto Rico ("UPR"), acted in violation of Plaintiffs' civil rights.

### III. ORDER TO SHOW CAUSE
**PART A.**

The Court notes that Analytical in its motion to dismiss did not request dismissal of Plaintiffs', Mayra Nuñez de Giles and the conjugal partnership constituted among her and her husband, claim under 42 U.S.C. § 1983. Notwithstanding, because the Court believes the above analysis and holding applies with equal force to Analytical, Plaintiffs are hereby **ORDER TO SHOW CAUSE by September 10, 1999 at 5:00 p.m.**, why the Court should not apply the aforementioned analysis and holding in favor of said Defendant. **ABSOLUTELY NO** extensions shall be granted. Failure to timely comply will result in the Court summarily applying the above analyses and dismissing Plaintiffs', Mayra Nuñez de Giles and the conjugal

AO 72A
(Rev.8/82)

partnership constituted among her and her husband, claim under 42 U.S.C. § 1983 against Analytical.

**PART B.**

### BACKGROUND - SUPERIOR COURT OF PUERTO RICO

The facts of this case (recited as follows, without further citation, specifically for purposes of the Order to Show Cause), are undisputed and are taken from Plaintiffs', Dr. Richard Gilés Toro ("Dr. Gilés"), Mayra Nuñez de Giles, and their conjugal partnership, Complaint (Docket No. 1) and a Judgment rendered by the Superior Court of Puerto Rico (Docket No. 59 – English translation). This case derives from a paternity suit brought before the Superior Court of Puerto Rico by Mrs. Luz Neyda Pagán ("Pagán"), representing her minor daughter, Richanell Kerty Giles, for the purpose of determining whether Dr. Gilés was the child's biological father. The Superior Court ordered Pagán, her daughter, and Dr. Gilés to submit to blood test for DNA analysis. The test was to be performed by the University of Puerto Rico ("UPR") Histocompatibility Laboratory pursuant to Art. V, sec. 1 of the Regulation No. 83 of the Puerto Rico Department of Health. See (Docket No. 1, p. 5). Dr. Gilés objected to the type and cost of the test. The Court sustained its order. UPR drew the blood, and sent the blood to Analytical Genetic Testing Center, Inc. ("Analytical") in Denver, Colorado, for the analysis. The results from the test were received by the Superior Court. With the purpose of authenticating the blood testing to which the parties and the minor had submitted themselves and at the request of the plaintiff, on October 20, 1996, the Superior Court issued a subpoena addressed to Dr. Angel Rodríguez Trinidad ("Dr. Rodríguez"), Director of the Histocompatibility Laboratory of the

University of Puerto Rico, School of Medicine, for him and/or the chemist who obtained the blood samples to conduct the DNA testing to appear before the Court and bring along all the documents relating to the case and the sample.

Gilés Toro requested that the Court suppress from the file the results of DNA testing, alleging that the results would cause him grave prejudice. The Court did not grant said request and Dr. Gilés appealed in certiorari on October 21, 1996, before the Circuit Court of Appeals. In an Opinion entered on November 6, 1996, the Circuit Court of Appeals denied the petition for certiorari and left as scheduled the hearing set for November 13, 1996. On November 12, 1996, a day before the hearing, Dr. Gilés once again filed a petition for certiorari and a Motion in Aid of Jurisdiction before the Circuit Court of Appeals. These were also denied.

Both parties, represented by counsel, appeared for trial. An expert witness appeared for Dr. Gilés concluding he was infertile. The Superior Court, however, did not grant the expert's testimony any credibility.[1]

Dr. Rodríguez, who had been subpoenaed by the Court to bring with him the complete

---

[1] The Superior Court took judicial knowledge that Dr. Gilés has also been a party in two other cases. Namely, case JFI 92-0033, Liccv E. Clavell Lagares vs. Richard K. Gilés Toro. In that case, the Court entered Judgment on October 21, 1992, declaring that the minor Karen Denisse is the daughter of Dr. Gilés. Child support was established for defendant to pay $300.00 dollars per month and the father-child relationship was regulated, and case JAL 94-980. Lilliam Giusti Morales vs. Richard K. Gilés Toro. In said case, the mother of minor Lilliam Gilés Giusti, daughter of the plaintiff and the defendant claimed before the Court child support in the amount of $300.00 per month for the minor daughter. From both cases and from the evidence introduced arises that the Gilés Toro presently has three daughters with his present wife and two other daughters for a total of five daughters acknowledged. Two of them are now 16 years old, one is 15, and the other two are 13 years old. Furthermore, the Superior Court found that during 1993, Luz Neyda Pagán Rivera had aborted a child of Gilés Toro's and then became pregnant again with her daughter, Richanell Kerty Giles, in 1994.

record of the case and also the chemist who had performed the blood testing, all at the request of the plaintiff, failed to comply with the Court's order. He neither brought the record nor produced the chemist. Adding a bizarre twist to the paternity suit and to everyone's surprise Dr. Rodríguez took the stand and testified for Gilés Toro as an expert witness in his area of specialty.

Dr. Rodríguez testified about the great resemblance between Gilés Toro and the three daughters by his wife, but indicated that he lacked capacity to testify about the resemblance between the defendant and the minor plaintiff, because according to him, minors "change a lot." Subsequently, Dr. Rodríguez testified that if a child resembles one of the parents it would be a resemblance "from the uterus."

Regarding his testimony about the resemblance, the Court did not grant any credibility to the testimony of this expert witness that was not even qualified as expert witness concerning this matter.

Regarding the testimony on the paternity evidence it is noticeable that Dr. Rodríguez is the Director of the Histocompatibility Laboratory of the UPR, School of Medicine, the recipient entity of the Court order to conduct the DNA testing. It was also Dr. Rodríguez, in his capacity as Director of said laboratory, who sent along with a memorandum signed by him the results of the tests to the Court in a sealed envelope indicating that the laboratory which had practiced same was the Analytical Testing Center, Inc. However, in his testimony, Dr. Rodríguez paid less credibility to the DNA testing ordered to the laboratory that he directs and which he himself remitted to the Court. He indicated that in said testing four characteristics of the person should have been analyzed and that only two were analyzed and that he lacked evidence that the blood sample for Dr. Gilés was compared to the samples of other Puerto Rican males. Although in the

memorandum he sent he indicates the following: "Further, testing of the alleged father indicates that he is approximately 9,000 times as likely to be the biological father as an unrelated Puerto Rican male." Thereby evidencing that it was indeed compared to the samples of Puerto Rican males.

The Superior Court called Dr. Rodríguez' attention to the fact that while he was the official of the government he should not testify against the evidence conducted by the government's lab of which he is director. Th expert witness replied that it did not matter and continued to testify. The Superior Court warned him that he could be in conflict with the provisions in the Government's Code of Ethics. Dr. Rodríguez was also asked whether he was charging for his expert witness testimony and he answered affirmatively, in fact, he received a check while in the very courtroom from the defendant in person. The Superior Court indicated for the record that the doctor's testimony, who was in the courtroom since 9:00 in the morning, ended in the afternoon and he indicated that he was not in a hurry, that he could dedicate the entire day to this case. The Superior Court disqualified doctor Rodriguez Trinidad for being in total violation of the Government's Code of Ethics[2] and also stated for the record that his

---

[2] The Superior Court in its holding stated the following: "As corollary to this judgment, it is necessary to point out the conduct displayed by doctor Angel Rodriguez Trinidad during trial. In our findings of facts we indicated that he was subpoenaed by the Court to bring with him the complete file for the case and also the chemist who performed the blood testing. He not only failed to comply with the court order, but to everyone's surprise he appeared to testify as expert witness for the defendant in his area of specialty. Doctor Rodriguez Trinidad holds the position of Director of the Histocompatibility Laboratory ascribed to the University of Puerto Rico School of Medicine and as such, he is a public employee of said entity. In his testimony, he paid no credibility to the D.N.A. testing ordered from the laboratory he directs and which results he personally sent to this Court in a sealed envelope. The Court directed this witness' attention to the fact that being an employee of a government office he should not testify against a test conducted by the government laboratory of which he is director. He was warned about potential

testimony lacked all credibility.

The DNA test admitted in evidence showed a result of 99.989% of paternity probability, also indicating that one in 1,700 Puerto Rican males could be the girl's father, excluding the 99.942% of Puerto Rican males. In fact, defendant emphasized the comparison between his samples and those by Puerto Rican males and from the test it arose that his paternal family is all of North American origin. The blood type testing ordered by the Court during trial at the defendant's request showed that the minor has a blood type 0+. Prior to the blood test both, Pagán and Dr. Gilés indicated each had 0+ blood type.

The Superior Court found that "[i]n the light of the documentary and testimonial evidence, of the circumstances of the relations between the parties, their genetic characteristics, the shape of the heads (we touched them physically) of the defendant and the minor, their identical foreheads, the similarity in their chins, the D.N.A. test and the blood type testing, this Court finds proof that Richanell is the daughter of Richard K. Gilés."

The Superior Court then summarized three Supreme Court of Puerto Rico cases (Ocasio v. Díaz, 88 D.P.R. 676 (1963); Ortiz v. Peña, 108 D.P.R. 458 (1979); and Pueblo v. Maisonave, 91 J.T.S. 67 (1975)) involving paternity and DNA evidence. Next, the Superior Court stated that the evidence needed by the Court to prove paternity is to have a witness testify about the facts and that

---

conflict with the provisions in the Government's Ethics Act. To questions by the Court, he indicated that he was being paid as expert witness, and in fact, he received a check from the defendant while in the courtroom. It is a fact verified by this Court, that doctor Rodriguez Trinidad's testimony ended shortly after noon time, but he indicated that he was not in a hurry and that he could dedicate all day to this case." Thereafter, the Superior Court went on to hold that Dr. Rodríguez had committed a conflict of interest and that his actions in the present case would be communicated to the Office of Government Ethics.

the Court grant him/her credibility. The Court may receive and appraise evidence of DNA testing, blood type tests, evidence of physical resemblance, evidence of sexual intercourse and all of them are to be considered jointly.

Finally, the Superior Court held that "[b]y virtue of the above stated facts and conclusions of law, the Court GRANTS the filiation complaint and in consequence determines that Richanell Kerty Pagán is the daughter of Richard K. Gilés Toro ... ."

## BACKGROUND – COMPLAINT

In the Complaint for the present action, Plaintiffs state that "Dr. Rodríguez Trinidad, DNA Testing Laboratory Director, under sworn testimony accepted that the DNA test performed to Dr. Giles Toro to determine paternity was incomplete, incorrect, and unreliable." (Docket No. 1, p. 7). Further, in "January 1997, the [Superior] Court based on these incomplete and inaccurate test results held that Dr. Giles Toro was the biological father of Richanell Kerty Pagán and ordered child support of $350 a month to be paid retroactive to the date of the filing of the paternity complaint. This was ordered even though the testing laboratory did not comply with applicable standards or guidelines, failed to take appropriate quality control measures and omitted experiments necessary to resolve ambiguities in the results." (Docket No. 1, p. 7).

## ORDER TO SHOW CAUSE

Pursuant to the Rooker-Feldman doctrine, the Court strongly believes it lacks subject matter jurisdiction over this case because this controversy has been fully adjudicated by the Commonwealth of Puerto Rico's courts. See District of Columbia Ct.App. v. Feldman, 460 U.S.

-10-

462, 482-86 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); see also Henry v. Connolly, 910 F.2d 1000, 1002 (1st Cir. 1990) ("a federal court cannot presume to sit in direct appellate review of final state court determinations in judicial proceedings."); International Cement Aggregates, Inc. v. Antilles Cement Corp., ___ F.Supp.2d ___, 1999 WL 613306, at *2 (D. P.R. 1999) ("Lower federal courts generally do not have jurisdiction to review state court decisions; rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United State Supreme Court. This principle is known as the Rooker-Feldman doctrine."). Further, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." International Cement Aggregates, Inc. v. Antilles Cement Corp., ___ F.Supp.2d at ___, 1999 WL 613306, at *3 (quoting Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring in the judgment)).

Further, this federal court must give full faith and credit to a final judgment by the Commonwealth of Puerto Rico courts. See Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 28 n. 1 (1st Cir. 1998); see also 28 U.S.C. § 1738. And the Court must look to local law, that is Puerto Rico law, to ascertain the judgments preclusive effects. Id. at 28-29. Puerto Rico law, Article 1204, provides in pertinent part:

> "In order that the presumption of res judicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such."

P.R. LAWS ANN. tit. 31, § 3343; see also P.R. LAWS ANN. tit. 32, § 1793. The Court finds particularly instructive the following:

> "Under Puerto Rico Law the res judicata doctrine applies to relitigation of the same claims and/or issues. In the instant case all the elements required under state law are present for the application of the doctrine of res judicata 'perfect identification must exist between the subject matter, the causes of action, the parties, and the capacity in which they acted and the former judgment by its own nature or by legal provision, must constitute an adjudication on the merits.' Colon v. San Patricio Corporation, 81 D.P.R. 242, 264, 1959 WL 13595 (1959); see P.R. Laws Ann. tit. 31, § 3343 and P.R. Laws Ann. tit. 32, § 1793."

Molina v. Sea-Land Servs., 2 F.Supp.2d 180, 183 (D. P.R. 1997). "[U]nder res judicata claim preclusion principles both federal and state (P.R.) 'a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action.'" Id. (citations omitted). Hence, the Court is strongly convinced that res judicata and collateral estoppel principles apply to this case barring Plaintiffs from re-litigating issues that were adversely decided by the state Superior Court.

The above stated doctrine was applied to a § 1983 claim by the First Circuit as follows:

> "It is well established that a federal court in a § 1983 action must give full preclusive effect to state court judgments adjudicating both issues and claims. See Arecibo Radio Corp. v. Puerto Rico, 825 F.2d 589, 591-92 (1st Cir.1987). See also Cuesnongle v. Ramos, 835 F.2d 1486, 1497 n. 8 (1st Cir.1987); Cinelli v. City of Revere, 820 F.2d 474, 479 (1st Cir.1987) (citing Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)); Isaac v. Schwartz, 706 F.2d 15, 16 (1st Cir.1983). The Supreme Court has held that under the federal full faith and credit statute, [28 U.S.C. § 1738.] federal courts in § 1983 actions must accord the same preclusive effect to state court judgments – both as to claims and issues previously adjudicated – as would be given in the state court system in which the federal court sits. Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 83-84, 104 S.Ct. 892, 897-98, 79 L.Ed.2d 56 (1984). The Court has rejected the notion that in the § 1983 context, "distrust of state courts ... would justify a limitation on the preclusive effect of state judgments," and has instead stressed the need to accommodate "notions of comity, [and to] ... prevent vexatious litigation." Migra, 465 U.S. at 84, 104 S.Ct. at 898. Federal courts must therefore look to state law to determine whether a party to a § 1983 action will be barred from relitigating an issue previously presented in state court (issue preclusion), or from raising a claim that could have been presented in the state proceeding (claim preclusion). Id.
> 
> ...

> If, as we assume, Willhauck did not raise his facial attack to section 25 – or an as-applied challenge to the conduct of MDC Officer Halpin – in the course of that prosecution for violation of that statute, he was precluded from raising it subsequently in his § 1983 action under the doctrine of claim preclusion. As we observed in Roy v. City of Augusta, 712 F.2d 1517, 1521 (1st Cir.1983), 'state courts, too, are guardians of the federal constitution.' When a party should reasonably foresee that an adverse state court judgment will create a constitutional issue, that issue should be argued before the state court. Where it is not, the party is barred by principles of res judicata from later raising the constitutional claim against the same parties in a federal section 1983 action. Id. (citations omitted). On the other hand, if Willhauck did raise an unsuccessful attack on section 25 in the Suffolk County prosecution, Willhauck's only recourse for an erroneous denial of his constitutional claims would have been to pursue the denial of his facial challenge through the state courts and then by writ of certiorari to the United States Supreme Court."

Willhauck v. Halpin, 953 F.2d 689, 704-706 (1st Cir. 1991).

Therefore, the Plaintiffs are hereby **ORDERED TO SHOW CAUSE by September 10, 1999 at 5 p.m.**, why the Plaintiffs' 42 U.S.C. § 1983 should not be dismissed due to the Rooker-Feldman doctrine and/or res judicata or collateral estoppel principles. **ABSOLUTELY NO** extensions shall be granted. Failure to timely comply will result in the Court inferring that the Plaintiffs agree that the Plaintiffs' 42 U.S.C. § 1983 should be dismissed, pursuant to the Rooker-Feldman doctrine and/or res judicata or collateral estoppel principles, as to the remaining Defendants, Dr. Angel Rodriguez Trinidad and Analytical Genetic Testing Center, Inc.

IT IS SO ORDERED.

**Date: September 1, 1999**

P:\FINALORD ERS\97-2934 DIS

**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**