UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**RICHARD K. GILES TORO**
Plaintiff,

v.                                                          CIVIL NO. 97-2934 (DRD)

**THE UNIVERSITY OF PUERTO RICO, et al**
Defendants.



**OPINION AND ORDER**

Pending before the Court is whether or not subject matter jurisdiction exists to entertain this case. The Court has issued an Order for Plaintiffs to Show Cause as to why the Court should retain subject matter jurisdiction and not dismiss for failure to state a claim. (Docket No. 75). In the Order, the Court invoked the Rooker-Feldman doctrine asserting that "the Court strongly believes that it lacks subject matter jurisdiction over this case because this controversy was fully adjudicated by the Commonwealth of Puerto Rico's courts . . . . [T]he Court is strongly convinced . . . [the principles of res judicata and collateral estoppel] apply to this case barring Plaintiffs from re-litigating issues that were adversely decided by the state Superior Court." *Id.* Analytical Genetic Testing Center ("Analytical") also requested a dismissal for lack of subject matter jurisdiction and failure to state a claim. (Docket No. 92). Plaintiff objected to Analytical's motion asserting that his claim was for a violation of his constitutionally protected right to due process under 42 U.S.C. § 1983, and furthermore, he was not trying to relitigate or have a State court decision re-evaluated. (Docket No. 100).

# I
# FACTUAL BACKGROUND

The factual background of this case is undisputed and is taken from Plaintiff's Complaint (Docket No. 1) and a judgment rendered by the Superior Court of Puerto Rico (Docket No. 59, English translation). This case derives from a paternity and child filiation suit brought before the Superior Court of Puerto Rico by Mrs. Luz Neyda Pagan ("Pagan"), representing her minor daughter, Richanell Kerty Giles, for the purpose of determining whether Dr. Giles Toro was the child's biological father. At Pagan's request, the Superior Court ordered Pagan, her daughter and Dr. Giles Toro to submit to DNA tests. The Court ordered the test to be performed by the University of Puerto Rico ("UPR") Histocompatability Laboratory pursuant to Art. V, sec. 1 of Regulation No. 83 of the Puerto Rico Department of Health. The Court rejected Dr. Giles Toro's initial objection to both the type and cost of the test. Consequently, all parties had their blood drawn at the UPR facilities. The UPR Histocompatibility Laboratory then contracted the testing to Analytical Genetic Testing Center, Inc. ("Analytical") in Denver, Colorado.

Thereafter, Analytical remitted the results to Dr. Angel Rodriguez Trinidad ("Dr. Rodriguez"), in his capacity as Director of the UPR Histocompatibility Laboratory. Dr. Rodriguez then reported the test results to the Court and indicated that the administering laboratory was Analytical. Along with the test results Dr. Rodriguez submitted a memorandum to the Court stating that "... testing of the alleged father indicates that he is approximately **9,000 times as likely** to be the biological father as an **unrelated Puerto Rican male**." (Emphasis ours).

Once the test results were submitted to the Court, Dr.Giles Toro requested that they be suppressed, alleging that the results would cause him grave prejudice; the Court refused said request.

2

Nonetheless, Dr. Giles Toro appealed in *certiorari* on October 21, 1996, before the Circuit Court of Appeals. In an Opinion entered on November 6, 1996, the Circuit Court of Appeals denied the petition for *certiorari* and left as scheduled the hearing set for November 13, 1996. On November 12, 1996, a day before the hearing, Dr. Giles Toro once again filed a petition for *certiorari* and a Motion in Aid of Jurisdiction before the Circuit Court of Appeals. Again these requests were denied.

At Superior Court trial, Dr. Giles Toro contracted an expert witness to testify that he was infertile. The Superior Court, however, refused to grant the expert's testimony any credibility.[1] Dr. Rodriguez, who had been subpoenaed by the Court to bring with him the complete record of the case, and/or the chemist who had performed the blood testing, failed to comply with the Court's order. Despite his position as Director of the UPR's Histocompatibility Laborotary, Dr. Rodriguez took the stand and testified as an expert witness on Dr. Giles Toro's behalf. Dr. Rodriguez refuted the test's credibility because only two personal characteristics were analyzed, whereas it should have been four. Furthermore, Dr. Rodriguez testified that he lacked evidence that the blood sample from Dr. Giles Toro was compared to the samples of other Puerto Rican males, thereby contradicting the memorandum he personally submitted to the Court. Dr. Rodriguez further discredited his testimony

---

[1] The Superior Court took judicial knowledge that Dr. Giles Toro has also been a party in two other cases. In case JFI 92-0033, <u>Liccv E. Clavell Lagares vs. Richard K. Giles Toro</u>, the Court entered Judgment on October 21, 1992, declaring that the minor Karen Denisse is the daughter of Dr. Giles Toro. Child support was established for defendant to pay $300.00 dollars per month and the father-child relationship was regulated. In case JAL 94-980, <u>Lilliam Giusti Morales vs. Richard K. Giles Toro</u>, the mother of minor Lilliam Giles Giusti, daughter of the plaintiff and the defendant claimed before the Court child support in the amount of $300.00 per month. From both cases and from the evidence introduced it appeared that Dr. Giles Toro had three daughters with his present wife and two other daughters for a total of five acknowledged. However, in 1993, Luz Neyda Pagan Rivera aborted a child of Dr. Giles Toro and then again became pregnant by him with her daughter, Richanell Kerty Giles, in 1994.

3

by admitting that he was receiving compensation for his testimony; in fact, he received a check from Dr. Giles Toro while in the very courtroom. Throughout his testimony, the local Court judge seriously questioned Dr. Rodriguez' ethical conduct, as he was undermining his own government run work product. Despite the Court's admonishments and warnings that he was in violation of the Government's Code of Ethics, Dr. Rodriguez continued his subverting testimony. Consequently, the Superior Court disqualified Dr. Rodriguez for being in violation of the Government's Code of Ethics and also stated for the record that his testimony lacked credibility.

Despite Dr. Rodriguez' testimony the Court admitted Analytical's test results into evidence. The DNA test results showed 99.989% of paternity probability, furthermore, excluded 99.942% of Puerto Rican males. Additionally, all parties involved, Pagan, Dr. Giles Toro and Richanell Pagan all have 0+ blood type. The Court determined paternity due to "the circumstances of the relations between parties, their genetic characteristics, . . . , the D.N.A. test and the blood type testing." Finally, the Superior Court held that "[b]y virtue of the above stated facts and conclusions of law, the Court GRANTS the filiation complaint and in consequence determines that Richanell Kerty Pagan is the daughter of Richard K. Giles Toro . . . ."

## II
## MOTION TO DISMISS STANDARD
## FED.R.CIV.P. 12(b)(6)

Rules 12(b)(1) and 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE provide that a defendant may, in response to an initial pleading, file a motion to dismiss the complaint for lack of jurisdiction or for failure to state a claim upon which relief can be granted, respectively. It is well-settled, however, that a complaint should not be dismissed unless it appears beyond any doubt that

the plaintiff can prove no set of facts which may support a claim entitling him or her to relief. Ronald C. Brown v. Hot, Sexy, and Safe Productions, Inc., 68 F.3d 525 (1st Cir. 1995); *see also* Miranda v. Ponce Federal Bank, 948 F. 2d. 41, 44 (1st Cir. 1991); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court must accept as true the well pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences from the allegations in favor of the plaintiff. *See* Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994); Correa-Martinez v. Arrillaga-Beléndez, 903 F.2d 49, 51 (1st Cir. 1990); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). However, "[b]ecause only well pleaded facts are taken as true, we will not accept a complainant's unsupported conclusions or interpretations of law." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In order to survive a motion to dismiss, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Gooly v. Mobil Oil Corp. 851 F.2d 513, 515 (1st Cir. 1988). Although all inferences must be made in Plaintiff's favor, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, *supra,* at 3.

Moreover, when considering a motion to dismiss under Rule 12(b)(6) the Court must limit its focus to the allegations of the complaint. Litton Indus., Inc. v. Colon, 587 F.2d 70, 74 (1st Cir. 1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ." *Id.; see also* Doyle, *supra,* at 190.

In Rogan v. Menino, 175 F.3d 75 (1st Cir. 1998), the Court held that a dismissal for failure to state a claim can only be upheld if, after giving credence to all well pleaded facts and making all reasonable inferences in the plaintiff's favor, the factual averments do not justify recovery on some theory asserted in the complaint. With this standard in mind, we move to the analysis of the pending dispositive motions.

## III
## ANALYSIS

Plaintiff was ordered to show cause as to why this suit should not be dismissed pursuant to the doctrines of Rooker-Feldman, *res judicata* and/or collateral estoppel. The "records and judicial proceedings" of any state, territory, or possession of the United States "shall have the same full faith and credit in every court" within the United States. 28 U.S.C.A. § 1738. This provision applies to the judgments from Puerto Rico's local courts. Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 28 n.1 (1st Cir. 1998). Thus, this Court must provide a Puerto Rico court judgment the full faith and credit that it would receive in Puerto Rico's local court system. *See* Felix Davis v. Vieques Air Link, 892 F.2d 1122, 1124 (1st Cir. 1990). The Court finds that Plaintiff in bringing this 42 U.S.C. §1983 action is essentially seeking an unauthorized review of a state court decision and is, therefore, precluded from retaining jurisdiction due to both the Rooker-Feldman Doctrine and the principles of *res judicata* and/or *collateral estoppel*.

### A. ROOKER-FELDMAN DOCTRINE

The Rooker-Feldman doctrine takes its name from two Supreme Court cases: Rooker v.

6

Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and six decades later, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In Rooker, the Supreme Court affirmed the district court's conclusion that jurisdiction was lacking, stating that: "Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment of a state court for errors of that character." Rooker, *supra,* at 416. Feldman reaffirmed the Rooker holding that only the Supreme Court has jurisdiction to review decisions of state courts; therefore, district courts have no jurisdiction to entertain challenges to state-court decisions, even if the challenges alleged are constitutional in nature. Feldman, *supra,* at 476. The effect of the Rooker-Feldman doctrine is to provide an independent basis for prohibiting collateral attack on state court judgments. Rooker, *supra,* 415-416; Feldman *supra,* at 476.

In order to apply the constraints of the Rooker-Feldman doctrine a judgment must have been final and from the highest court. U.S. Industries v. Laborde, 794 F.Supp. 454, 462 (D.P.R. 1992). First, as applied in Feldman, the doctrine is based on 28 U.S.C. § 1257, which limits review of final judgments on the merits of the highest state court of a State to the Supreme Court. *Id.* Review of final judgments of the Supreme Court of Puerto Rico are controlled by 28 U.S.C. § 1258. The two provisions have no substantive differences.

The Court finds that Plaintiff's federal cause of action seeks an unavailable review of the Ponce Superior Court judgment. The Ponce Superior Court paternity and child support proceedings offered Dr. Giles Toro the opportunity to fully litigate the subject matter. The Ponce Superior Court entered a final judgment on the merits finding that Dr. Giles Toro was the father of the minor Richanell Pagan. As part of the filiation and child support proceedings the Commonwealth Court

7

ordered DNA tests by the University of Puerto Rico. The DNA test concluded paternity by 99.989% probability and excluded 99.942% of Puerto Rican males. By a preponderance of the evidence the Ponce Superior Court found that Richanell Pagan was Plaintiff's daughter. In the judgment itself the Ponce Superior Court found that the DNA test was admissible and that it supported and complemented the evidence that resulted in a finding that Plaintiff was the father. The Ponce Superior Court held a full-fledged trial on the merits and considered proof from both parties (including the DNA results). The DNA result was not the only proof which the Court considered in determining paternity by a preponderance of the evidence.

Second, the final adjudication must be from the highest state court. Laborde, *supra*, at 462. The Ponce Superior Court judgment was subject to appellate review before the Puerto Rico Circuit Court of Appeals, and thereafter through certiorari to the Puerto Rico Supreme Court. The appeal was denied by the Circuit Court of Appeals. Although the decision which Plaintiff seeks to have reviewed by this Court was issued by the Superior Court, the Puerto Rico Supreme Court entered a final judgment of the highest court of Puerto Rico, by denying the writ of certiorari. Laborde, *supra*, at 463. Since there is a final judgment on the merits from the highest state court of Puerto Rico, the Rooker-Feldman doctrine applies in full force to this case. Rooker, *supra*, at 416; Feldman, *supra*, at 486; Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 703 (1st Cir. 1995); Laborde, *supra*, at 463.

The State Court decision involved Luz Neyda Pagan and her minor daughter as Plaintiffs and Giles Toro as Defendant. At bar, however, Plaintiff is Giles Toro whereas the Defendants are Analytical and Rodriguez-Trinidad. Notwithstanding, a corollary of the Rooker-Feldman doctrine is that lower federal courts lack jurisdiction to consider claims inextricably intertwined with review

8

of state judicial proceedings. Lancelloti v. Fay, 909 F.2d 15, 17 (1st Cir. 1990).[2] "A federal claim is inextricably intertwined with the state-court claims 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 23 (1987); *see also* Sheehan v. Marr, 207 F.3d 35 (1st Cir. 1999) (*quoting* Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999)). Where federal relief can only be predicated upon a conviction that the state court was wrong, the federal proceeding becomes a prohibited appeal of the state-court judgment. Pennzoil, *supra,* at 25. Therefore, the Court must determine whether Plaintiff's federal cause action would void the Ponce Court's judgment. *Id.*

In the state court proceedings, the Ponce Superior Court was asked to adjudicate paternity and child support concerning Plaintiff and her minor daughter Richanell Pagan. In the present action, Plaintiff states that his due process rights were violated on several occasions. First, the blood test was performed by Analytical, not by the U.P.R. Furthermore, Dr. Rodriguez defied the court order and failed to produce a representative from Analytical to be questioned, thereby depriving Plaintiff the opportunity to cross-examine the test administrator. Finally, that both Defendants knowingly and willingly submitted erroneous test results to be admitted into evidence. However, the Ponce Court held that the DNA test results were admissible and paternity was established at

---

[2] A party adversely affected by a state court's decision is free to seek vindication of his federal right in the state appellate courts and ultimately in the Supreme Court of the United States. Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 296 (1970); *see also* 28 U.S.C. § 1257. Lower federal courts are without subject matter jurisdiction to sit in direct review of state court decisions. *Id.* (*citing* Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 296 (1970)); Wang, *supra,* at 703.

99.989% of paternity probability.[3] Although Plaintiff avers that he his bringing suit for a violation of his due process rights, in reality, it is the DNA test itself and its introduction that are in contention. The actions which Plaintiff claims deprived him of his due process are the same actions that resulted in the introduction of the DNA results and subsequently a finding of paternity. If the Court were to hold that Plaintiff's due process rights had been violated, it would essentially be holding that the DNA test was wrongly entered into evidence, and therefore would be a prohibited appeal of the state-court judgment.[4] It is a basic principle of subject matter jurisdiction that federal district courts should not serve as appellate courts for state court decisions. *See* Wilson v. Shumway, 264 F.3d 120 (1st Cir. 2001).

### B. *RES JUDICATA AND COLLATERAL ESTOPPEL*

The Supreme Court has held that under "the federal full faith and credit statute, 28 U.S.C. § 1738, federal courts in § 1983 actions must accord the same preclusive effect to state court judgments –both as to claims and issues previously adjudicated– as would be given in the state court system in which the federal court sits." Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 83-84 (1984). The First Circuit has further clarified that "*res judicata* operates as an

---

[3] Under Puerto Rico law, paternity shall be incontestable in those cases in which the genetic test ordered by the Court produces a probability of paternity of ninety-eight (98) percent or higher. Special Child Support Act, 8 L.P.R.A. 512.

[4] *See* Pennzoil, *supra,* at 25; *see also* Roy v. City of Augusta, Me., 712 F.2d 1517, 1523 (1st Cir. 1983) (if federal courts were to entertain civil rights complaints based on procedural deprivations for which adequate state remedies exists, "every disgruntled applicant could move [its procedural grievances] into the federal courts . . . any meaningful separation between federal and state jurisdiction would cease to hold and forum shopping would become the order of the day").

absolute bar to the relitigation of the same cause of action between parties (or their privies) and that a prior judgment rendered on the merits is conclusive not only to the issues which were determined but as to all matters which might have been determined as well."[5] Therefore, federal courts must give full faith and credit to final judgments of the Commonwealth of Puerto Rico courts. *See* Baez-Cruz, *supra,* 28 n. 1 (1st Cir. 1998); *see also* 28 U.S.C. § 1738.

To determine the preclusive effect of the commonwealth's judgment in federal court, the Court must look to Puerto Rico law. *See* 28 U.S.C. § 1738; *see also* Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000). The Puerto Rico Civil Code sets forth the doctrine of preclusion: "In order that the presumption of the *res judicata* may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." P.R. Laws Ann. tit. 31, § 3343. Although this provision speaks of "res judicata," it additionally permits issue preclusion or collateral estoppel. Muniz Cortes v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000); *see also* Baez-Cruz, *supra,* at 29. The Supreme Court of Puerto Rico has held that when an issue "essential to the prior judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive in subsequent litigation among the parties."[6] Puerto Rico's *res*

---

[5] Apparel Art International, Inc. v. Amertex Enterprises Ltd., 48 F.3d 576 (1st Cir.1995) (*quoting* Allen v. McCurry, 449 U.S. 90, 94 (1980)); Westcott Construction Corp. v. Firemen's Fund of New Jersey, 996 F.2d 14, 16 (1st Cir. 1993) (*quoting* Griffin v. State of R.I., 760 F.2d 359, 360 (1st Cir. 1985)).

[6] Cortes v. Intermedics, Inc., 229 F.3d 12, 13 (1st Cir. 2000); Felix Davis, *supra,* at 1124-25 (citing Pereira v. Hernandez, 83 P.R.R. 156, 161 (1961)); *see also* Texaco Puerto Rico, Inc. v. Medina, 834 F.2d 242, 245-46 (1st Cir. 1987) (*citing* A & P Gen. Contractors v. Associacion Cana, Inc., 10 P.R. Offic. Trans. 987, 995-96 (1981)).

11

*judicata* principles operate to preclude claims that were or could have been raised in a previous suit.[7]

### 1. *Identity of Things*

The Puerto Rico Supreme Court held there is an identity of things only "if when deciding on the object of a complaint, the judge may contradict a prior decision affirming a right arisen or arising from, or a right affirmed by a prior court decision." Futura, *supra,* at 43 (*quoting* A & P Gen. Contractors, Inc. v. Associacion Cana, Inc., 110 D.P.R. 753, 764-65 (1981)). For *res judicata* purposes, "thing corresponds basically to the object or matter over which the action is exercised." Lausell Marxuach v. Diaz de Yanez, 3 P.R. Offic. Trans. 742, 745 (1975). Identity of "things" is found when a decision in the second action contradicts the prior adjudication. *See* A & P, *supra,* at 998.

The Court has already addressed this issue in the Rooker-Feldman analysis. A ruling of the Court would in effect contradict the Superior Court's ruling. If the Court were to find that Plaintiff's due process rights were violated, it would in essence be contradicting the Ponce Superior Court's decision to enter the DNA test into evidence and the subsequent finding that Plaintiff is Richanell's father. Therefore, the Court finds that there is an identity of things because the object of the action is the same and a ruling by this Court would contradict the Ponce Court's holding. *See* Futura, *supra,* at 43; Laussell, *supra,* at 745; A & P, *supra,* at 998.

---

[7] *See generally,* Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n. 5 (1979); *see also* Boateng v. Interamerican University, Inc., 210 F.3d 56, 62 (1st Cir. 2000) (*citing* Commonwealth v. Sociedad Civil Agricola e Industrial, 4 P.R. Offic. Trans. 546, 554 (1975)); *see also* Sahar Fatach v. Seguros Triple S, Inc., 1999 WL 202852, 99 TSPR 41 (Puerto Rico); Baez- Cruz, *supra,* at 24; Mercado Riera v. Mercado Riera, 100 P.R.R. 939, 949 (1972).

### *2. Identity of Cause of Action*

The Supreme Court of Puerto Rico has explained "cause of action" as "the principal ground, the origin or exceptions raised and decided, and it must not be mistaken for the means of proof nor for the legal grounds of the claims adduced by the parties." Lausell, *supra,* at 748 (*quoting* VIII-2 Manresa, Comentarios al Codigo Civil Espanol 301 (6th Ed.1967)). Although a single cause of action can manifest itself in several different claims, the requisite identity is achieved if all such theories concern "the same operative nucleus of fact."[8] Plaintiff's claims of violations of due process are the same issues that resulted in a finding that Plaintiff was the father of Richanell Pagan; they arise out of the same transaction, seek redress for the same wrong, and rely on the same factual basis. Therefore, they arise from the "same operative nucleus of fact;" Plaintiff's theory of recovery is barred.

Plaintiff argues that he is free to advance new matters without regard to the role that the new matters might have played had they been advanced in the first action. This is not exactly correct; Plaintiff is not free to advance new matters at the district court level if they arise from the same operative nucleus of fact and would result in reversal of the state court's holding. *Id.*; Feldman, *supra,* at 476. Plaintiff avers that the present action is not an attempt to avoid the consequences of an adverse judgment emitted by Ponce Superior Court; rather he seeks relief for the violations to his due process rights. Plaintiff alleges that the violations began when he was ordered to submit to a DNA test. However, Plaintiff litigated and appealed the administration and introduction of the DNA test. The fact that Plaintiff did not know that the test was conducted by Analytical is inconsequential

---

[8] *See* Gonzalez, *supra,* at 755; Kale, *supra,* at 1166. Apparel Art, *supra,* at 583-84; Landrigan v. City of Warwick, 628 F.2d 736, 741 (1st Cir. 1980).

because the Ponce Superior Court determined it was admissible. Although Plaintiff was not offered the opportunity to cross-examine the DNA test administrator, he could have raised his objection at trial. A claim is precluded not only if it was actually raised in a previous suit, but if it "could have been raised." *See* Cortes v. Intermedics, Inc., 229 F.3d 12, 15 (1st Cir. 2000); Mercado Riera v. Mercado Riera, 100 D.P.R. 939 (1972); Colon v. San Patricio Co., 81 D.P.R. 242, 264, 1959 WL 13595 (1959); Rodriguez Rodriguez v. Dr. Wallace A. Colberg, 92 J.T.S. 102 (1992); Molina v. Sealand Services, 2 F.Supp.2d 180, 182 (D.P.R. 1997). Furthermore, Plaintiff's allegations that Defendants knowingly and willfully submitted inaccurate results to the court are dismissed because the Ponce Superior Court explicitly held that the DNA test was valid and credible.

### 3. *Identity of Parties:*

The preclusion statute provides that there is identity of parties whenever "the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same." P.R. Laws Ann. tit. 31, § 3343. Although Puerto Rico's mutuality requirement is strictly worded, on a number of occasions the Puerto Rico courts have not read this requirement literally.[9]

The parties in commonwealth court suit were Luz Pagan and Richanell Pagan as plaintiffs and Dr. Richard Giles Toro as defendant. The matter before the District Court was filed by Dr. Giles

---

[9] *See* Futura, *supra,* at 43; Republic Sec. Corp. v. Puerto Rico Aqueduct and Sewer Auth., 674 F.2d 952, 955-56 (1st Cir. 1982); De Leon v. Colon, 42 P.R.R. 21, 27 (1931) (permitting preclusion based on previous action that included additional defendants); Restatement (Second) of Judgments § 51(1).

Toro against Defendants Angel Rodriguez Trinidad and Analytical Testing Center. Plaintiff avers that if he does not comply with the state court judgment and his obligations, Richanell (represented by her mother) is the only person who can file suit against him, therefore, there is not an identity of parties. However, although the language of the provision calls for "the most perfect identity of persons" between the first and second case, federal courts have noted that on a number of occasions the Puerto Rico courts do not read the requirement literally. Baez Cruz, *supra,* at 29 (*citing* Futura Dev. Corp. v. Centex Corp., 761 F.2d 33, 43 (1st Cir. 1985)). The preclusion statute itself goes on to provide that, there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or "when they are jointly bound with them or by the relations established by the indivisibility of prestations [i.e., "a performance of something due upon an obligation" according to Webster's New International Dictionary 1796 (1971) ] among those having a right to demand them, or the obligation to satisfy the same." Baez Cruz, *supra,* at 29; P.R. Laws Ann., tit. 31, § 3343.

Analytical was contracted by the U.P.R. Histocompatibility Laboratory and Dr. Rodriguez as Director of said laboratory are in privity with Pagan because it was she who requested that the Court order the parties to submit to a blood test. (Docket No. 59). On March 14, 1996, the Court ordered that the U.P.R. School of Medicine Histocompatibility Laboratory to conduct the testing and remit the results directly to the Court. *Id.* Whereas Defendant Dr. Giles Toro contested the admissibility of the DNA results, it was in Plaintiffs' interest to defend their admissibility. Therefore, there is a mutuality of interest amongst Plaintiffs in the commonwealth suit and Defendants in the federal suit.

### *4. Collateral Estoppel:*

Finally, although Defendants were not parties in the state court proceedings, they need not have been in order to invoke issue preclusion/collateral estoppel. In order to use collateral estoppel offensively, Defendants need only show that Plaintiff, "against whom issue preclusion will be applied, had a fair opportunity to litigate the issue fully.[10] To meet this standard, "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." Baez Cruz, *supra,* at 30 (*quoting* Kremer, 456 U.S. at 481). The Court has already addressed the issue that Plaintiff had the opportunity and availed himself thereof to contest the introduction of the DNA test and that Plaintiff should have raised both his federal and state constitutional claims during the state court proceedings. Plaintiff's suit essentially alleges the same facts that were presented and fully litigated at the state court level. Collateral estoppel operates defensively in this matter because it precludes Plaintiff from relitigating the validity and admission of the DNA test results, an issue he lost. Sahar Fatach v. Seguros Tripe S, Inc., 99 TSPR 41, 1999 WL 202852 1, 3; *see also* A&P, *supra,* at 762. Dr. Giles Toro, had an obligation to raise these issues at the state court level. Gonsalves, *supra,* at 29 ("As plaintiff, all theories must be presented in the complaint; as defendant, all theories required by the compulsory counterclaim rule must be presented therein."). Preclusion includes all "claims that were raised or **could have been raised**."[11]

---

[10] Allen, *supra,* at 101; Kyricopoulos v. Town of Orleans, 967 F.2d 14, 16 (1st Cir. 1992); Arecibo Radio Corp. v. Commonwealth of Puerto Rico, 825 F.2d 589, 591-592 (1st Cir. 1987).

[11] Colon Padilla, 81 D.P.R. at 264, ; Perez v. A.F.F., 87 D.P.R. 118, 1963 WL 15028 (1963); Rodriguez Rodriguez v. Colberg Comas, 131 D.P.R 10, 1992 WL 755578 (1992); Vizcarrondo v. Board of Trustees of the University of Puerto Rico, 139 F.Supp 2d 198, 204 (D.P.R. 2001); Molina, *supra,* at 181-83.

16

# V
# CONCLUSION

In conclusion, Plaintiff cannot escape the finality of the state proceedings against him. The Court holds that it does not have subject matter jurisdiction to entertain this case under the Rooker-Feldman Doctrine and the principles of *res judicata* and/or *collateral estoppel*. The Court finds that Plaintiff, in bringing this 42 U.S.C. §1983 action, is essentially seeking an unauthorized review of a state court decision. "The Civil Rights act is not a vehicle for collateral attack upon final state court judgments, and that a writ of certiorari of the United States Supreme Court is the only method by which such a decision may be reviewed." Willhauck v. Halpin, 953 F.2d 689, 704 n. 14 (1st Cir. 1991). The effect of the Rooker-Feldman doctrine is to prohibit this kind of collateral attack on state court judgments. Rooker, *supra,* at 415-416; Feldman, *supra,* at 476. Additionally, *res judicata* and/or *collateral estoppel* operates to preclude Plaintiff's claims, even if the later claim raises issues not raised in the earlier proceeding, if they arise from the same "operative nucleus of fact."[12] Further, issue preclusion applies to claims that "could have been raised" at the prior Superior Court case. Colon v. San Patricio, *supra,* at 264. Plaintiff has not satisfactorily proven that he was denied a "full and fair opportunity to litigate" his claims in the state court proceeding; he cannot escape the constraints of collateral estoppel.[13]

---

[12] *See* Gonzalez, *supra,* at 755; Kale, *supra,* at 1166. Apparel Art, *supra,* 583-84; Figueroa v. Banco de San Juan, 108 D.P.R. 680, 687 (1979).

[13] Allen, *supra,* at 101; Arecibo Radio Corp. v. Commonwealth of Puerto Rico, 825 F.2d 589, 591-592 (1st Cir. 1987); Medina v. Chase Manhattan Bank, N.A., 737 F.2d 140, 145 (1st Cir. 1984).

**WHEREFORE**, the Court holds that it does not have subject matter jurisdiction to entertain this case, therefore, the case is **DISMISSED WITH PREJUDICE**. Judgment shall be issued accordingly.

**IT IS SO ORDERED.**

Date: December 28 2001.

P \Helen\97-2934_RF wpd

**DANIEL R. DOMINGUEZ**
**U.S. District Judge**

18